THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD N. DOUGLASS, Appellant, v. CHARLES NAEHR, a Police Justice, etc., Respondent.

*Husband and wife — duty of the former as to supporting the latter —1871, chap. 395, as amended by chap. 171 of 1882.*

In order to authorize the making of an order requiring a husband to pay a specific sum of money weekly, for the support of his wife or children, as provided in chapter 395 of 1871, as amended by chapter 171 of 1882, it must be shown that the husband has, without just cause, neglected or refused to perform the duties and obligations towards his wife and child which are imposed upon him by the existing law, and that by reason thereof the burden of supporting his wife and children will be thrown upon the public.

It was not intended by the said acts to give the wife any new or additional remedy or right, either directly or indirectly; it was the public and not the wife that was to be protected by these acts.

CERTIORARI to review proceedings had before a police justice of the city of Brooklyn, upon a complaint made by the relator's wife charging him with abandoning and refusing to support her and her children.

*Charles J. Patterson*, for the appellant.

*A. Simis, Jr.*, for the respondent.

PRATT, J.:

The relator has been adjudged a disorderly person, in that he abandoned, neglected and refused to support his wife, within the

meaning of chapter 395, Laws of 1871, as amended by chapter 171 Laws of 1882.

This statute relates to the county of Kings. Its material provisions are as follows : "All persons who abandon or threaten to run away and leave their wives and children or either of them without adequate support, a burden on the public, or who shall leave them in danger of becoming a burden on the public, or who shall neglect to provide for them according to their means, against whom a warrant shall be issued· upon a complaint made upon oath to any justice of the peace or police justice in the county of Kings, shall be brought before the justice of the peace or police justice who issued said warrant, and if it shall appear by the confession of the offender or by competent testimony that the person so charged is guilty, the justice of the peace or police justice before whom the said offender is brought shall make an order in which he shall specify the sum of money to be paid weekly by said person for the support of the wife or children, or either."

It seems that while the relator and his wife were living together in New York city, a quarrel arose and that she left him and came to reside with their daughter in Brooklyn, where she has ever since lived. He remained in New York for a time and then went to New Jersey. He contributed to her support to some extent from time to time, and finally came to Brooklyn where he now resides. She at last complained to the commissioners of charities, one of whom presented this charge against the relator.

The judgment recites that the conviction was in part upon his own confession as well as upon the evidence, but the proceedings upon the trial are all returned under the *certiorari* and the question arises whether or not this charge was fairly established by the proofs.

It is obvious that the wife had the opinion that the relator had been unfaithful to her, and that she had determined to live with him no more. Before leaving New York he offered to provide a separate house for her in that city, but this she refused.

The extent of the relator's means was not very clearly shown, but he had offered to do something by way of contributing to her support after he came to live in Brooklyn.

The determination of the questions of fact raised by the relator

involves a careful consideration of the object of the statute and the nature and degree of proof required in the proceedings under it. The statute was designed to protect the public against the burden of supporting a wife and children when the husband, without just cause, neglected or refused to perform his legal obligations in that regard. It was not intended to give the wife any new remedy either directly or indirectly. (*Bayne* v. *People*, 14 Hun, 181.) Interpreted literally, it might seem to warrant a conviction when the husband, possessed of proper means for any cause refused to support his wife. We do not think, however, such could have been the legislative intent. It authorizes a criminal proceeding and declares that to be a crime which was not theretofore punishable as an offense. It must therefore be strictly construed with reference to the object in view and the general policy of the law existing at the time it was passed.

We do not think it imposed any new duty upon a husband towards his wife. It simply declares that unreasonable neglect or refusal to perform certain existing obligations, in cases where such conduct will result in imposing a burden upon the public, shall be punishable as a crime. Any other view would result in a most serious disturbance of the reciprocal rights and duties which are founded upon the marital relation.

The wife is entitled to reasonable support by the husband. It is her duty as well as right, to live with him in such proper place as he provides. He is entitled to determine not only the place, but their style of living, and it is her plain duty to follow him wherever his interest, necessity or reasonable wish may lead.

It is only when he neglects or refuses to properly provide, or maltreats her, or is guilty of infidelity to her, that she is justified in refusing her submission to his reasonable requirements in this respect.

These are general fundamental rules, they are of such importance to the public weal that courts will most jealously guard and enforce them; every piece of new legislation affecting them has always received strict construction even as between the parties directly interested. It is our duty to construe this act in aid rather than in hostility to these rules. In this view it is difficult to find in this act anything more than authority for a criminal proceeding against the

husband, who so unreasonably neglects or refuses to perform existing legal obligations towards his wife, that she has become or is likely to become a public burden. Neither was this statute intended to apply to a case where a wife capriciously and without cause, refuses to accept reasonable provision for her support at the place which the husband may have selected, even though she is liable to become a public burden.

The questions here must be tested, not alone by the measure of the relator's pecuniary ability, but by the conduct of the wife and his disposition to recognize his pecuniary obligations to her.

Is her want of support due to his refusal to provide for her or to her unwillingness to perform the duties of a wife and live with him? She testified that she was unwilling to live with him.

This refusal was not justified by any legal proof, in the case, of infidelity or cruelty upon his part. If there is any foundation for the suggestion that relator has committed adultery, the wife has an ample remedy in a suit for divorce and alimony.

When we look into the case for proof of a refusal to provide, we find nothing but an original demand for a separate maintenance on the part of the wife. This part of the case is bare of that certainty of demonstration that overcomes all reasonable doubt, which distinguishes the criminal from a civil proceeding.

A careful reading of the case cannot fail to impress upon the mind the belief that the conviction was obtained through an erroneous view of the object and scope of the statute.

According to our view of the statute, there is an utter failure to make out a case to warrant a conviction of the offense charged.

The judgment should be reversed.

Present — BARNARD, P. J., DYKMAN and PRATT, JJ.

Conviction and judgment reversed.